No. 47.—JOHN W. FOWLER, plaintiff in error, *vs.* D. G. WALDRIP, defendant.

[1.] This Court will not award a new trial upon the ground that the verdict is contrary to the evidence, where there is conflicting testimony.

[2.] Where the Court instructs the Jury, that in weighing the evidence they are to give the most weight to those witnesses who are not under the influence of those biases which ordinarily control our feelings and wishes, this Court cannot infer that the Jury disregarded the charge of the Court, from the fact that their verdict was in accordance with the evidence of a witness who was the daughter of the party in whose favor the verdict was rendered.

[3.] The title of a *bona fide* purchaser without notice of a prior voluntary conveyance is good.

[4.] To defeat the title of a *bona fide* purchaser, in favor of a prior voluntary conveyance, notice of that conveyance at the time of his purchase, must be brought home to him. The registry of a voluntary deed is not notice to a subsequent purchaser. Notice of such deed must be actual; it cannot be constructive. Whether the notice be carried home to the purchaser, depends upon the circumstances of each case, and the evidence adduced to prove it.

Trover, in DeKalb Superior Court.    Tried before Judge HILL, March Term, 1851.

This was an action of trover, brought by the defendant in error, against the plaintiff in error, for the recovery of a negro woman and child, and their hire.

The defendant pleaded the general issue.

On the trial, the plaintiff read in evidence a deed of gift for the negroes, from Edah Fowler, (the mother-in-law of the plaintiff, and the mother of the defendant,) dated the 17th day of February, 1845, attested by Benj. F. Shumate and Lemuel Dean, J. P. and recorded in the Clerk's office of the Superior Court of DeKalb County, on the 4th day of June, 1846.

The plaintiff introduced several witnesses, to prove possession of the negroes by the defendant.

William Mason swore, that the woman in January, 1848, was worth $600 00, and the child $150 or $200, and thinks he is now worth $350 or $400, and that the hire is worth $60 per year.

The defendant attacked this "deed of gift," on the ground of fraud.

Lemuel Dean swore, that at the request of plaintiff, he witnessed the execution of the "deed;" that plaintiff told him he wished it kept secret; that at the time Mrs. Fowler signed it, she was lying in bed, very ill; he thinks it was not read.

Plaintiff stated the object of the deed was to convey to him the negroes, after the old lady's death, she reserving a life estate in them; thinks that it was not read to the old lady, from the fact that he is mistaken in the character of the instrument.

He witnessed a bill of sale afterwards, from Mrs. Fowler to the defendant, for the same negroes; the defendant gave the old lady a negro girl by the name of Mary, in exchange for them, and his note for $400; it was executed the 7th day of January, 1848. The defendant then read in evidence, a release from John W. Fowler to Edah Fowler, from her liability upon her warranty in the bill of sale, executed by her to the defendant.

Mrs. Edah Fowler swore, "I do not recollect of ever signing a deed of gift to the plaintiff; I do have some recollection of signing something, which I thought was a will, by which I conveyed to the plaintiff, the negro woman Lucy, reserving to myself the use and control of said negro during my life," &c. She further swears, "that she can neither read nor write."

The defendant read in evidence, a bill of sale from Edah Fowler to himself, for the negroes in controversy, attested by Lemuel Dean, J. P. and proved by him to have been executed on the 7th day of January, 1848.

Plaintiff in rebuttal, read in evidence, the testimony of Miss Edah Ann J. Waldrip, taken by depositions.

She swore, "that she was present when the deed of gift to plaintiff, was read by Dean to Mrs. Edah Fowler; that Dean asked her if that was the way she wanted it made, and she answered in the affirmative; that Shumate asked Dean to read it again, which he did, and the old lady again said that it was as she wanted it; and remarked that there had been so much lawing about the estate already, that she intended to place *that* out of dispute, and intended that the plaintiff should have it."

Benjamin F. Shumate swore, that Mrs. Fowler enjoined secrecy at the time the deed of gift was executed; thinks that Dean read it to her; and thinks that at his request it was read a second time; that the old lady remarked that she would not have fixed her property as she did, if they had not gone to law about the other property.

The Jury found a verdict in favor of the plaintiff. Counsel for defendant moved for a new trial, on the grounds,

1st. Because the verdict is contrary to evidence.

2nd. Because it is contrary to law.

3rd. Because it is contrary to the charge of the Court.

The Court overruled the motion, and counsel for defendant excepted.

EZZARD, for plaintiff in error, contended—

1. That Fowler was a *bona fide* purchaser without notice of the voluntary deed, and was therefore protected.　6 *Ga. R.* 111.

2. That the registry of a deed not duly and legally recorded, is not even constructive notice.　5 *Mason's R.* 244.

3. That the verdict was manifestly contrary to the evidence, so far as the hire was concerned.

4. That the verdict was contrary to the charge of the Court, as to the weight of the evidence.

MURPHY & CALHOUN, for defendant, contended—

1. The Court will not grant a new trial, on the ground of the verdict being against evidence, where there is evidence on both sides, and a mere preponderance of evidence against the verdict. 2 *Geo. R.* 16.　4 *Geo. R.* 175, 437, 525.　6 *Geo. R.* 310. 8 *Geo. R.* 306.　7 *Geo.* 269.

2. The Court will not set aside a deed on the ground that it was not read to the grantor at the time of its execution, unless the grantor requested it to be read ; but will presume she knows the contents.

3. In questions of fraud, Courts will never disturb a verdict, where there is evidence on both sides.　7 *Geo. R.* 269.　3 *John. R.* 271.

4. Where there are two concurring verdicts, the Court will not set aside the verdict, though it be against the weight of evidence.

5. A new trial will not be granted upon matters of fact, unless upon the most unequivocal evidence that injustice has been done the party.　*Killen vs. Sistrunk & Wife,* 7 *Geo. R.* 283.

*By the Court.*—NISBET, J. delivering the opinion.

We cannot disturb the verdict upon the ground that it was contrary to evidence. It is claimed that it was found contrary to the evidence in two particulars. First, it is said that the *amount* of the *hire* is contrary to evidence; and to sustain this position, it is insisted that there is no evidence to authorize the finding of as much hire as the verdict gives. It is true that the evidence is not clear; and we doubt whether, as jurors, we could have charged the defendant with as much hire as was given in this case. The weakness of the evidence is in relation to the precise time that the plaintiff in error, *Fowler*, had the negroes in possession. Now, it is settled, that a new trial will not be granted, because the evidence preponderates against the verdict. Nor will it be granted by us, because the presiding Judge expressed an opinion to this effect. It is well understood that this Court will interfere with the discretion of the presiding Judge in granting or denying new trials, upon the ground that the verdict was against the evidence, only in extreme cases. We must see clearly that his discretion has been abused. We do not believe, that he can be said to have abused his discretion in refusing a new trial in a case where he may concede that the weight of evidence is against the finding. He is the better judge, whether granting or withholding a new trial, will promote the ends of justice. It is only in clear cases, that he is authorized to control the rightful power of the Jury over the facts; it must be a palpable case to authorize us to control him. This is not such a case. We have over and over again refused to award a new trial when there is evidence on both sides, although the strength of the testimony be against the verdict. It is enough in this case to say, that it does not fall within the rules we have prescribed for our government on this subject; there was some evidence from which the Jury might have inferred that the whole amount of hire which they found was due; the evidence was conflicting. Secondly, it is assumed that the Jury found contrary to the evidence, in sustaining the title to the defendant in

error.   The position is that his deed from the grantor, *Mrs. Fow-ler*, for the negroes, was fraudulently obtained ; that it was not read to her when she signed it ; and that intending to execute a deed to take effect only at her death, reserving a life estate to one negro, she was fraudulently made to execute an absolute deed for that negro and other property besides, to the plaintiff below.   The question of fact, was fraud or not, in this transaction, and the assumption of counsel is, that all the evidence sustains the fraud, and there is none to the contrary.   The remarks already made, apply to this ground, and that too with an increase of force ; because *fraud*, in fact, is a matter left with more than the usual exclusiveness to the Jury.   Clearly on this point, there was a conflict of evidence ; for without going farther, it is enough to state that more than one of the witnesses swear that the deed was read to the old lady, before she signed it.   Upon questions of this kind, ordinarily, I cannot believe that it is necessary to enter into an analysis of the evidence.   When we rule that there is evidence enough to constrain us not to interfere, it is to be taken (and I am sure will be taken,) as true, that we have examined it carefully.

[2.]  The presiding Judge instructed the Jury, that in weighing the evidence, the greatest weight was to be given to those witnesses who were not influenced by those biases ordinarily controlling our feelings and wishes.   The plaintiff in error contends that this instruction was disregarded by the Jury, and on that account he was entitled below, and is here entitled to a new trial.   The vital point here is, did the Jury in fact disregard this instruction.   The learned counsel arrives at it *arguendo*.   The strongest witness sworn for the defendant in error, he says, was *Miss Waldrip*, who was the daughter of the defendant in error—the weight of evidence was in conflict with her evidence.   She being the daughter of the defendant in error, was influenced by those biases which ordinarily control our feelings and wishes, and the finding being in accordance with her evidence, and against the weight of evidence in conflict with it, *therefore*, the Jury did not give the greatest weight to those wit-

nesses *not being under the influence of those biases which ordinarily control our wishes and feelings.*

It is true that the relationship of the witness goes against her credibility; but the Jury are to judge of it. A witness may be perfectly credible, notwithstanding such relationship, and the Jury are at liberty to believe such a witness as implicitly as if the relationship did not exist. Such relationship does not necessarily weaken or destroy the credibility of the witness; it does not follow as a matter of course, that this witness was under the bias against which the Court guarded the Jury; it is not apparent to us that the Jury so regarded her; we can not infer that they did, from the fact that the verdict was in favor of the party to whom her evidence was most favorable. She moreover was not without corroboration by other evidence. Her testimony was not directly impeached. Suppose the finding in this case had been for the plaintiff in error, then with equal plausibility, the defendant in error might have complained that the Jury did not follow the instructions of the Court; for it so happens that one of the principal witnesses for the plaintiff in error was his mother, who might as fairly be presumed to testify under a bias as the daughter of the defendant in error. It is impossible for us to say that the verdict was against the charge of the Court.

[3.] A new trial was farther asked, upon the ground that the verdict was contrary to law, in this, that the defendant below, and the plaintiff before this Court, was a *bona fide* purchaser without notice of the deed to the defendant in error, and as such was entitled to a verdict. If it be true that the plaintiff in error bought the negroes, *bona fide*, without notice of the deed of gift to the defendant in error, his title ought to prevail. A purchaser without notice is protected against a voluntary conveyance. Parties here do not disagree about the law of the case; nor is it denied but that the purchase by the plaintiff in error was for a valuable consideration.

[4.] The only controversy is about the notice. This deed to *Waldrip,* the defendant in error, was recorded, but not until some eighteen months after its execution. Notice of a prior convey-

ance must be carried home to the purchaser, else his title will be protected. But how carried home to him? We decided, in *Fleming vs. Townsend*, that the registry of a voluntary deed was not notice to a subsequent *bona fide* purchaser; that the notice must be actual notice and could not be held to be proved by construction. (6 *Geo. R.* 111.) So we now hold. We did not in that case determine how the notice should be carried home to the purchaser, or what amount of evidence would be sufficient to establish it. We say, " we believe that the notice must be actual, in order to make the notice good against him, (the purchaser;) that is, there must be brought home to him knowledge of the prior conveyance at the time of his purchase. How this shall be done, must depend upon the circumstances which attend each case ; whether in a given case the purchaser had this knowledge, must depend on the proofs adduced to establish it." We lay down no other rule now. Leaving the registry out of view, as conclusive of notice, and giving to it no farther effect than as a fact to be considered by the Jury, as bringing home notice to Fowler, we are of opinion that the evidence in this case is sufficient to authorize us in holding that the Jury did not violate the law in inferring from what was proven, that *Fowler* had notice of the deed to *Waldrip*, and in rendering their verdict accordingly. The Reporter's brief of the testimony does not contain the evidence on this point. By referring to the bill of exceptions, I find that *Mrs. Edah Fowler* testifies, that she has reason to believe that the plaintiff in error, *Fowler*, had no knowledge of the deed to defendant in error, *until on or about the 7th of January*, 1848, when, she says she told him of *Waldrip's* treatment of her, and that she was not allowed the control of her property. The 7th of January, 1848, is the day on which *Fowler* purchased ; it seems, then, that on or about that day—the day on which he bought—the old lady told him of *Waldrip's* treatment to her, and admits in her evidence, that on or about that time he had knowledge of her deed of gift to the defendant in error. On that day, too, to wit, 7th January, 1848, *Fowler* wrote to the witness, *Dean*, who was one of the subscribing witnesses to the deed to *Waldrip*, informing

him that *Mrs. Fowler* was on her way to Alabama, and wished to see him; that when he got to *Fowler's* house, she asked him what kind of instrument it was she had given to *Waldrip*, and he told her *in presence of Fowler*, that the deed made to him reserved a life estate in the old lady. This is all the evidence of notice, from which we think the Jury might infer that *Fowler* had notice of the deed. That on the same day that he bought, he had notice of *a deed to Waldrip* is directly proven. The evidence was sufficient to warn him—to put him upon inquiry—and in the absence of any evidence to shew want of notice, his purchase must be considered as being made at his own risk. Upon such evidence as this, it is not possible for us to say that the Jury found against his title contrary to law. The law is that notice must be actually carried home to him; whether it was or not, under this evidence, it was the province of the Jury to determine.

The argument of counsel is that the notice proven is of a deed reserving a life estate, when the deed actually made has no such reservation; therefore, in law, the party had no notice whatever. He had notice of a *deed*—a conveyance; if so, he was not in the position of, an honest man, unsuspectingly buying property to which he believed he was getting a good title. Again, he had notice of a deed which conveyed away the ultimate property in the negroes he was buying.

Let the judgment be affirmed.