ADAM IVEY, plaintiff in error, *vs.* THE STATE OF GEORGIA, defendant in error.

[1.] The word "Indictment," marked on the special presentment of a Grand Jury, does not change its character as a presentment, and it may be given in evidence as a presentment, on the trial of the cause.

[2.] The presiding Judge may refer to the answer a witness gives to a question, laying a foundation to impeach him, the Court not remembering, and the counsel disagreeing as to the answer.

[3.] If a witness swear wilfully and knowingly false, even to a collateral fact, his testimony ought to be rejected entirely, unless it be so corroborated by circumstances or other unimpeached evidence as to be irresistible.

[4.] The Court may charge the jury as to the force and effect of circumstantial evidence.

Indictment for fornication, from Warren Superior Court Tried before Judge THOMAS, at October Term, 1857.

Adam Ivey was put upon his trial for the offence of fornication.

The State offered in evidence the minutes of the Inferior Court, of October Term 1856, containing the presentment by the Grand Jury, of that term, of the defendant for said offence.

Counsel for the defendant objected to its introduction, on the ground that said record purported to be an *indictment.* The Court overruled the objection and admitted the evidence holding that although *called an indictment,* it was in fact a *presentment.* To which ruling, defendant's counsel excepted.

*Joel C. Ivey,* on the part of the State, testified that he knew defendant, and also Elmira Thomasson; that she lived on defendant's land, about two miles from his residence; defendant and Elmira were both unmarried; during part of last year, witness lived with defendant, in his house; saw frequent intimacies between defendant and Elmira; had known her to stay many nights at defendant's; had seen them in bed together frequently, under the cover; had watched them in bed together for hours at a time; did this on many occa-

sions; this all happened in this county during the summer of last year, about June.

*Cross-examined.*—Came out of his bed-room, (a shed room) to a window, and looked through the glass into defendant's bed-room, where he saw him and Elmira in bed together; had watched them as much as four hours at a time, from dark till 10 o'clock; no one else in the room but a little negro girl; saw nothing done; was induced to watch, out of curiosity, to see if anything was done, but never saw anything; witness has a suit pending in this Court, against defendant for slander; defendant is witness' uncle; was teaching school when he lived with his uncle; had a difficulty with him; did not have a fight; defendant turned him off from his house, and had him arrested with a peace warrant; *witness did not state, in the presence of Albert C. Ivey, in Warrenton, a short time after April Court, that he intended to do defendant all the harm he could, and if could not do it in one way, he would in another;* did not tell Henry Ivey, about three years ago, walking over his plantation, he intended to do defendant all the harm he could, and if he could not do it in one way he would in another; testified before the grand jury, in this case; looked closely in the window; did not see anything done.

*E. Sallis,* for the State, swore that he lived with defendant as overseer, last year; was at his house pretty often; never saw defendant and Elmira Thomasson in bed together; never saw any familiarities between them; has known Elmira to stay whole days at defendant's; seen her there after dark at night, and early next morning.

*Cross-examined.*—Defendant employed Elmira occasionally, last year to cut and make negro clothes; saw her at work on negro clothes, at defendant's; knows defendant paid her for it; saw him pay her in money; there are four rooms in defendant's house, with beds in them; defendant is old; perhaps seventy-five, and nearly blind.

The State here closed.

Defendant introduced *Albert C. Ivey,* who testified, that a short time after last April Court, at Warrenton, he heard Joel C. Ivey say he intended to do the old man, the defendant, all the harm he could, and if he could not do it one way, he would in another; it was not said to me; I was some distance off, and heard it; the remark was made to the others who were along in the company.

The Solicitor General moved to rule out this testimony, because defendant's counsel had not laid a foundation for impeaching the witness for the State, Joel C. Ivey. The question to him being, as the Solicitor contended, "did you not say *to* Albert C. Ivey" &c., and Albert C. Ivey saying, "it was not said *to* me" but simply that "he heard him say" &c. Counsel for defendant contended that he asked the question, "did you not say in presence of Albert C. Ivey" &c. The Judge stated that he was not certain how the question was asked, but thought defendant's counsel was right, and admitted the testimony, but instructed the jury that it was for them to decide what the question was, if they found it as contended for by defendant's counsel, then the testimony of Albert C. Ivey was competent and they ought to consider it; if it was as claimed by the Solicitor, then his testimony was incompetent and should not be considered. To which charge counsel for defendant excepted.

*Albert C. Ivey.* further testified, that he thought at the time the words were spoken, that they were intended for him, to see if he would take it up.

*Cros-examined.*—Does not recollect who else was present at the time the words were spoken; is the nephew of defendant.

*Henry C. Ivey,* for defendant, testified that about three years ago, while walking in the plantation with Joel C. Ivey, he said he intended to *trouble* defendant all he could, and if he could not in one way, he would in another; he had heard Joel C. Ivey say he had had a fracas with the defen-

dant; saw defendant's shirt torn, about the time the peace warrant was issued; is a nephew of defendant, and cousin to Joel C. Ivey.

*Cross-examined.*—Knows nothing about who tore defendant's shirt; did not see it done.

Defendant closed.

*Joel C. Ivey,* re-called by the State, said it was true, as Henry Ivey had testified, that he told him that he intended to trouble defendant all he could; that was, however, in relation to a slander case which he had commenced or was about to commence, against defendant.

Defendant's counsel requested the Court to charge the jury, that if the witness, Joel C. Ivey, had, in their opinion, from the evidence, sworn falsely in any one particular, they ought to throw out the whole of his testimony, which charge the Court refused, but charged the jury that if they believed that he had sworn falsely as to any one particular fact, then they should discredit the whole of his testimony, unless supported by another witness or by corroborating circumstances.

The Court further charged, that in offences of this kind, it is not necessary in order to convict, to prove by positive testimony, the commission of the act. It may be proved by circumstances. If facts are proven to exist, which, from the nature of things, are followed by the act, then the evidence may be deemed sufficient, and if you believe from the testimony, that the defendant, being an unmarried man, was seen in bed with an unmarried woman, with no other person in the room, the door shut, and they under the cover then you are authorized to find the defendant guilty, because, from the nature of man, the one act follows the other. If the above facts be proven, the law presumes the defendant guilty, but this presumption may, like all others, be rebutted. Whether the facts proved raise this presumption,

or whether, if raised, such presumption has been rebutted, is for you to decide from the testimony.

To which charge and refusal to charge, defendant excepts.

The jury found the defendant guilty.

Whereupon counsel for defendant tenders his bill of exceptions, and alleges as error, the decisions, charges and refusals to charge above excepted to.

E. H. POTTLE, for plaintiff in error.

SOL. GEN., represented by W. H. HULL, for the State.

*By the Court.*—McDONALD, J. delivering the opinion.

[1.] The Court below committed no error in admitting as evidence to the jury, the record of the presentment of the grand jury, on which the Solicitor General made out the bill of indictment. The mere entry on the record of the word "indictment," did not change it from what we usually understand a presentment to be. It did not have the name of a prosecutor, and it was stated in the margin to be the "special presentment of the grand jury." Indeed, we have already held, that when a presentment contains fully and formally all the charges necessary in a bill of indictment, the Solicitor General may prosecute it as an indictment, without making out a literal copy.

[2.] The next exception is on the charge of the Court, to the jury respecting the competency of the evidence of Albert C. Ivey introduced to impeach the testimony of Joel C. Ivey. The Solicitor General moved to rule out the evidence of the impeaching witness, on the ground, substantially, that there was no direct contradiction of the statement of the witness intended to be impeached. The Court did not remember distinctly, the answer of the first witness, to the question propounded to him, and referred that question to the recollection of the jury, the Solicitor General and defendant's counsel disagreeing as to the answer, and charged them to regard or

disregard the evidence, accordingly as they should remember that his answer was the one way or the other. It would certainly have been more regular to have re-examined the witness on that point, if he was at hand. If he was not accessible, the Court resorted to the only practicable mode of disposing of the matter. He instructed them correctly as to the law of the case, and the exception is not to his referring the decision of that question to the jury, but to his charge to them, admitting that he was right in referring it to them.

[3.] The request made of the Court, by defendant's counsel, to charge the jury, that if the witness, Joel C. Ivey, had, in their opinion, from the testimony, sworn falsely in any one particular, they ought to throw aside the whole evidence, is not founded in law. The evidence of a witness is false if it is not true. But it may be false by accident and without intention, on his part; and it may be false by design. The witness who testifies falsely, when he intends to testify truly, and the fault is in his memory, and not in his intention, is not guilty of perjury. But if he testifies falsely wilfully and knowingly, he is guilty of perjury, if to a matter material to the issue, or point in question. The whole narrative of a witness who intends to swear truly, ought not to be discarded as untrue, because, from the failure of his memory, his evidence is false in one particular. But if a witness perjure himself, that is swear *wilfully* and *knowingly* false, even to a collateral fact, his testimony ought to be rejected entirely, unless it be so corroborated by circumstances, or other unimpeachable evidence, is to be irresistible. *Mac Nalley's evidence*, 4. The request of defendant's counsel makes no distinction between the testimony of a witness who swears falsely, wilfully and knowingly, and the one whose testimony is false through mistake or the failure of memory. The refusal of the Court to charge as requested, is not erroneous, and if there be any fault in the charge of the Court as given, it is in favor of the defendant,

[4.] We think there is no error in the charge of the Court,

39

as to the effect of circumstantial evidence, and the weight due it in cases like the one before him. The Court used a strong expression when he said, that "if the above facts be proven by the testimony, the law presumes the defendant guilty." It would have been better, put in another way; that the law would authorize the jury to presume the defendant guilty. A presumption is an .inference as to the existence of a fact not actually known, arising from its necessary or usual connexion with others which are known." *Phil. Ev., Cowen & Hills notes* 289, *note* 298. In a subsequent part of his charge, the presiding Judge gave such an explanation of the presumption to which he referred, as rendered what he had said, harmless to the defendant. There was no motion for a new trial in this case, and as the rigid exactions of the statute in reference to the granting of new trials, do not apply to it, satisfied as we are with the finding of the jury, upon the facts in proof, we affirm the judgment of the Court below.

Judgment affirmed.