EDWARD B. SKIPPER, plaintiff in error, *vs.* THE STATE OF GEORGIA, defendant in error.

| 59 | 63 |
|----|----|
| 93 | 489 |
| 59 | 63 |
| 103 | 206 |
| 59 | 63 |
| 111 | 839 |
| 59 | 63 |
| 120 | 317 |

1. The maxim "False in one thing, false in everything," is not to be understood as constraining the jury to discard all the testimony of a corrupt witness, when he is satisfactorily corroborated on material points by circumstances, or by other evidence unimpeached.
2. Ill-will may (but not necessarily must) weaken the evidence of a witness who testifies while under its influence. It does not, *per se*, impeach the witness. The jury are to measure its effects in the given instance.
3. Though generally a party cannot directly impeach his own witness, he may contradict him by proving the facts to be otherwise than as the witness has stated them in evidence.
4. When all the evidence implicating the prisoner tends to give him the character of a principal felon, there is no propriety in instructing the jury to acquit, if they should find him to be an accessory only. The charge of the court in every case should be adjusted to the facts.
5. Verdict supported.

Criminal law. Witness. Impeachment. Accessory. New trial Before Judge KIDDOO. Randolph Superior Court. May Term, 1877.

Reported in the opinion.

B. S. & W. C. WORRILL, for plaintiff in error.

JAMES T. FLEWELLEN, solicitor general, by JOHN T. CLARKE, for the state.

BLECKLEY, Judge.

The larceny was of three cows. The *corpus delicti* was clearly proved. One cow had been recovered. The hides of the other two had been found and identified. All three of the animals had been driven into Alabama and sold. The prisoner's brother had sold them. He was jointly indicted with the prisoner for the larceny, and, at the time of the prisoner's trial, had been convicted. He was a witness for the state on the prisoner's trial, and if his testimony was true, the prisoner was undoubtedly guilty as charged. There was some appearance of self-contradiction in a part of his evidence. Some of it was contradicted by another witness introduced by the state. Still, the main facts implicating the prisoner stood uncontradicted, and as to all of them that were essential, he was strongly corrobated by another witness, who testified to seeing the prisoner, with some other person, engaged in driving the cattle, near the place from whence they were stolen, and about the time the larceny was committed. This second witness was a female, who admitted that she had prosecuted the prisoner for stealing some of her property.

1. Request was made of the court to charge the jury that if they believed a witness "has sworn falsely in any one thing, or upon one point," they were to conclude "that he has sworn falsely in the whole." Also, that if they believed, from the evidence, that the prisoner's brother, "as insisted upon, and admitted by counsel for the state, has been guilty of knowing and wilful perjury in one particular, or upon one point," they were "to conclude that he is false in the whole of his statements."

The court declined so to charge. One good reason for declining may be assigned, applicable alike to both propositions: It is, that no allowance is made for corroboration, and the record contains strong corroborating evidence. Indeed, the latter evidence was sufficient in itself to warrant a conviction. The true rule is, that if a witness swear wilfully

and knowingly false, his testimony ought to be disregarded entirely, unless it is so corroborated by circumstances, or other evidence unimpeached, as to be irresistible. 23 *Ga.,* 576; 13 *Ib.*, 508. Besides this broad reason that goes to the rejection of both propositions, there is another well founded objection to each of them. The first proposition fails to distinguish between testimony that is false merely, and that which is knowingly and wilfully false. See 23 *Ga.*, 581; 7 Wheat., 283. The second proposition asserts that counsel for the state admitted and insisted upon the perjury; and the court was requested to instruct the jury that such was the fact. Perhaps it was not the fact; and the refusal of the request may have been due, in part or in whole, to that circumstance. The bill of exceptions does not inform us whether what the request assumes, was true or false.

2. Another request to charge, which was also refused by the court, was in these terms, " If you believe from the evidence that either one or more of the witnesses has ill-will or unkind feelings to prisoner, that is one of the methods of impeaching a witness, and that weakens the testimony of the witness." Ill-will in a witness does not, *ipso facto*, work an impeachment, nor does it necessarily weaken the force of his testimony. It may weaken it, and is proper to be considered by the jury. Code, §3876; 2 Phil. Ev., 729, 730; 9 *Ga.*, 121. Compare what is said on relationship. 10 *Ga.*, 356; 6 *Ib.*, 349. No doubt, there are conscientious witnesses who are made the more cautious by the existence of any ill-will under which they labor. They guard themselves against being influenced by it, and in their apprehension of going beyond the truth under the lead of their feelings, they stop something short, to be on the safe side. Thus, their ill-will operates favorably, rather than unfavorably, to the party against whom they are called. Witnesses may be scarce who can do full justice to their enemies, but certainly there are some. For my own part, I think there are multitudes of people who are trustworthy and reliable in all situations and under all circumstances. Declaim against the

world as we may, it abounds in truth, purity and integrity. The law brands no witness as impeached just because he is not at peace with the scoundrel against whom he testifies. It recognizes the possibility of bias in his evidence, but it does not go further, and convert the possibility into a certainty. It leaves that for the jury to do, in the event they shall believe, on their oaths, that it ought to be done, under all the circumstances of the particular case. The jury *may* discount for ill-will, but there is no rule that they *must*.

3. Another request made and refused was, that the state could not contradict its own witnesses, unless counsel for the prosecution had been misled by the witnesses. A party cannot, generally, impeach his own witness by evidence adduced for that purpose, but this is a rule touching the admissibility of evidence, and is for the court to deal with—not the jury. Nor does the rule, when properly understood, prohibit evidence to prove the facts to be otherwise than they may have been stated to be by some of the party's own witnesses. In this way, contradiction is allowed, though direct impeachment be not. 7 *Ga.*, 198, 199, citing 1 Greenleaf's Ev., §§442, 443; 1 Phil. Ev., 309, and note 535 in 2 *Ib.*; 16 *Ga.*, 593. In the special case of a party being entrapped by the previous contradictory statement of his witness, even direct impeachment is permitted. Code, §3869. And see, as to witnesses examined in behalf of the state on public prosecutions, 1 Phil. Ev., 310, 311; 2 *Ib.*, note 537, p. 782.

4. Finally, the court refused to charge as requested, that on this indictment the prisoner could not be convicted, if he was guilty only as accessory before or after the fact. If the prisoner was guilty at all, he was a principal. There was no evidence which affected him, that did not go to impress that character upon him. Unless the evidence is so utterly false as to be of no force against him whatever, he was personally present, and took an active part in driving off the cattle when they were stolen. He committed the larceny for himself, and did not merely procure its com-

mission. There was no evidence on which to base any charge, touching an accessory before the fact or after the fact. For this reason, the request was properly refused.

5. The usual grounds of motion for new trial that the verdict was contrary to evidence, to law, etc., were all properly overruled. The whole case rests on the truth or falsehood of the evidence. The jury thought there was enough truth in it to establish guilt, and their opinion upon such a question is decisive.

Cited by counsel; 13 *Ga.*, 508; 20 *Ib.*, 156; 23 *Ib.*, 297, 576; 1 Wharton's Cr. Law, 783, 785.

Judgment affirmed.