## 39816. FUGITT v. THE STATE.

WELTNER, Justice.

Fugitt — known throughout this trial as Wallace — was indicted for the murder of John Evans. The jury returned a verdict of guilty and thereafter found two aggravating circumstances: that the murder was committed for the purpose of receiving money (the proceeds of a life insurance policy on the victim), and during the commission of another capital felony, to wit, kidnapping with bodily harm. Wallace was sentenced to death.

Evans and Wallace were close friends, and had lived together for about two years. Evans had taken out a life insurance policy for $15,000, naming Wallace as beneficiary. About two weeks prior to his death, the mobile home where Evans and Wallace lived burned to the ground. The two moved into a motel and on Sunday, prior to his death on Friday, Evans moved in with his brother Richard. On the day of his death Evans left work about 11:00 a.m. and began drinking. Wallace, after looking several places, found Evans at his brother's apartment at about 7:00 p.m. The two had planned to attend the races on Friday night and asked Evans' brother to go with them. He accepted, but first went to their mother's house to obtain their clean clothes. When he returned both Evans and Wallace had left the apartment. Evans' body was found just off the edge of a road in Clayton County a little after midnight, dressed in the same manner as last seen by his brother.

At Wallace's trial, the state called Kenneth Frady as a witness in rebuttal to Wallace's testimony. The state gave as a reason for not calling him earlier that his statement had just been corroborated.

Frady testified that on the night of Evans' death he lent Wallace his car in exchange for $300; that he met Wallace and Michael Denney (Frady's brother) at an unidentified apartment complex where the two placed a man, bound and gagged, in the rear seat; that Wallace returned the car three days later; and when he asked Wallace what happened to the man, Wallace answered that he had choked him to death and abandoned his body.

Following Frady's testimony, the state called Charles Harris, who testified that, while incarcerated with Wallace, he overheard Wallace and Denney discussing how they had killed Evans.

It was later discovered that Frady was incarcerated in Cobb County at the time of the killing. Denney produced work records showing that he was employed in New Mexico at the time of the killing. Wallace filed an extraordinary motion for new trial on this factual base.

After hearing, the trial court overruled the motion, holding: "I find that the testimony of Mr. Frady is merely impeaching as a witness that was produced at trial. That removing his testimony from the trial would not be so material that it would probably produce a different verdict."

1. One of the two aggravating circumstances found by the jury was kidnapping with bodily harm. Frady's testimony was the *only* evidence of kidnapping.

The materiality of the perjured testimony to Wallace's conviction cannot be questioned. Nor does Frady's testimony fall within that group of cases where a witness recants his testimony, after trial and conviction. *See Drake v. State,* 248 Ga. 891 (287 SE2d 180) (1982). Nor is Frady's testimony such as that contemplated by OCGA § 24-9-85 (a) (Code Ann. § 38-1806), where, when a witness' testimony is successfully contradicted, or impeached for general bad character or for contradictory statements, his credit shall be for the jury. Rather, Frady's testimony comes within the provisions of OCGA § 24-9-85 (b) (Code Ann. § 38-1806): "If a witness shall willfully and knowingly swear falsely, his testimony shall be disregarded entirely, unless corroborated by circumstances or other unimpeached evidence." For the background of this rule see *Ivey v. State,* 23 Ga. 576 (1857), and *Skipper v. State,* 59 Ga. 63 (1877).

It will be understood that a line exists between cases of impeachment (which can be any diminution of the credibility of a witness) and cases of knowing and wilful false swearing (which, when material, is perjury). The statute, accordingly, directs itself in its two parts to this division, and as to OCGA § 24-9-85 (b) (Code Ann. § 38-1806), it must be understood that the testimony which *must* be disregarded in its entirety is only that testimony which is wilfully and

knowingly false. *Alexander v. State,* 247 Ga. 780, 785 (279 SE2d 691) (1981); United States v. Holland, 526 F2d 284 (5th Cir. 1976); *Campbell v. State,* 237 Ga. 76, 77 (226 SE2d 601) (1976) (Hill, now C. J., concurring); *Gordy v. State,* 236 Ga. 723 (225 SE2d 287) (1976).

Here, there can be no doubt of any kind that Frady's testimony in every material part is purest fabrication. It cannot be said, therefore, that the new evidence establishing his perjury is "merely impeaching." To the contrary, it goes to the heart of our system of criminal justice, and we find that a new trial must be ordered. "We do so because we cannot and will not approve corruption of the truth-seeking function of the trial process." *Williams v. State,* 250 Ga. 463, 466 (298 SE2d 492) (1983).

2. As this case is reversed for the above-stated reasons, it is not necessary to address the remaining enumerations of error, except for one. In this fifth enumeration, Wallace contends that he was denied a fair trial because of prosecutorial misconduct, in four particulars:

(a) After being informed by an inmate that Wallace had solicited him to kill a key witness for the state, the district attorney's staff instructed the witness to make a false report to local police that an attempt had been made upon his life, and then referred to this false report in resisting before the court a defense motion.

(b) Wallace complains that the district attorney's staff intervened in an investigation of an escape attempt at the jail where Wallace was held, which Wallace learned of and reported to the chief jailer. The district attorney's staff went to the jail and advised the inmates that Wallace had informed on them. Thereafter, two prisoners agreed to testify for the state that they had overheard Wallace admit to murder. One of the prisoners, Harris, testified that he overheard Wallace and Michael Denney (who was in New Mexico at the time of the killing) discussing how the two of them had killed Evans.

(c) Another complaint involves the monitoring of a conversation between Wallace's counsel and an inmate at the jail. The district attorney's staff had the inmate send for counsel, purportedly to discuss representing him. The consultation between attorney and prospective client was recorded, surreptitiously, by means of a device known as a "body bug."

(d) On another occasion, when an investigator for Wallace's counsel visited Wallace in jail, she was detained, and her briefcase which contained defense counsel's file on Wallace's case, was seized and removed from her sight for about 45 minutes.

Because the conviction must be reversed for perjury and a new trial ordered, we need not decide whether these events constitute prosecutorial misconduct. See *Williams v. State,* supra. There can be

no doubt, however, that they are deeply disturbing and clearly inconsistent with a system of justice wherein the object of all legal investigation is the discovery of truth. There likewise should be no doubt that our assessment of them is, at minimum, one of severe disapproval.

3. Excluding the Frady testimony, and considering the testimony of the witness Don Ralph, the evidence was nonetheless sufficient to authorize a rational trier of fact to find Wallace guilty of murder beyond a reasonable doubt. Jackson v. Virginia, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

*Judgment reversed. All the Justices concur, except Gregory, J., who concurs specially.*

DECIDED SEPTEMBER 13, 1983.

*Philip L. Ruppert, Terry L. Shaw,* for appellant.
*Robert E. Keller, District Attorney, Clifford A. Sticher, Assistant District Attorney, Michael J. Bowers, Attorney General, Nicholas G. Dumich, Assistant Attorney General,* for appellee.

GREGORY, Justice, concurring specially.

I concur in the judgment. However, I believe the issue in Division 1 requires consideration of a different statute than that used in the majority opinion. OCGA § 24-9-85 (b) (Code Ann. § 38-1806), used by the majority, gives guidance to a factfinder where there is evidence that a witness has wilfully and knowingly sworn falsely during the trial. The issue we have to face arises from an extraordinary motion for new trial. Perjury by one of the State's rebuttal witnesses is asserted as the ground. This requires a consideration of OCGA § 17-1-4 (Code Ann. § 110-706): "Any judgment, verdict, rule, or order of court which may have been obtained or entered shall be set aside and be of no effect if it appears that the same was entered in consequence of corrupt and willful perjury. It shall be the duty of the court in which the verdict, judgment, rule, or order was obtained or entered to cause the same to be vacated upon motion and notice to the adverse party; but it shall not be lawful for the court to do so unless the person charged with perjury shall have been duly convicted thereof and unless it appears to the court that the verdict, judgment, rule, or order could not have been obtained and entered without the evidence of the perjured person, . . . ."

In order to set aside a judgment for perjury, the statute requires (1) that the witness be convicted of perjury and (2) that the judgment could not have been obtained without the perjured testimony. In a case

where there is no conviction for perjury but the evidence thereof is so strong as to cause this court to conclude as in the majority opinion "(T)here can be no doubt of any kind that Frady's testimony in every material part is purest fabrication," I would hold that requirement number one of the statute has been met. Considering the importance of the testimony in question, I would hold that requirement number two has also been met.