41952. FUGITT v. THE STATE.
(330 SE2d 714)

CLARKE, Justice.

This is the third appearance of this case. Appellant Fugitt (also known as Wallace) was convicted of the murder of John Evans and sentenced to death. His conviction was reversed on appeal in *Fugitt v. State,* 251 Ga. 451 (307 SE2d 471) (1983), because of the perjury of one of the state's witnesses, Kenneth Frady. Subsequently the appellant pled former jeopardy as a bar to retrial based on prosecutorial misconduct at his first trial. The trial court's denial of the plea in bar was affirmed by this court in *Fugitt v. State,* 253 Ga. 311 (319 SE2d 829) (1984). Appellant was retried and again convicted and sentenced to death. We reverse.[1]

---

[1] Appellant was convicted on retrial and sentenced to death by electrocution on October 12, 1984. The transcript was certified November 28, 1984. The case was docketed in this court on January 16, 1985. The case was argued on March 13, 1985.

1. We find the evidence to be sufficient under *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

2. Appellant contends that he was not given timely notice as required by the Unified Appeal Procedure that the state intended to seek the death penalty. His complaint is that the state did not affirmatively state on the record at the first hearing in the retrial of the case that the death penalty would be sought. However, appellant had actual notice that the state would seek the death penalty. No one questions that notice was given before the first trial. At the first hearing of the retrial, the court stated that the conviction had been reversed and the hearing was for the purpose of setting a new trial date and dealing with preliminary motions. The trial court asked if either party needed a fresh copy of the Unified Appeal Procedure, and appellant's attorney stated that he still had his copy. Since the unified appeal is applicable only to death cases, it is clear that appellant understood that the death penalty would be sought.

3. In his next enumeration of error appellant asserts that the trial court impermissibly restricted voir dire. The trial court, after asking the panel several general questions, asked the attorneys to ask no more questions in these areas. The questions asked by the court were the statutory questions required by OCGA § 15-12-164 concerning impartiality and capital punishment. These questions are "the usual voir dire questions put by the court" referred to in OCGA § 15-12-133. *Jordan v. State*, 247 Ga. 328 (276 SE2d 224) (1981). There was no objection by defendant to the court's instruction that the attorneys stay away from these areas and no indication of what questions defendant's attorney would have liked to ask. Therefore, even if there were questions which defendant's attorney should have been allowed to ask on voir dire, there is no record of any attempt to ask such questions or the court's refusing to allow them. Appellant also complains that the court sustained the state's objection to six voir dire questions. Although there is no citation to the transcript, we have considered the questions as set forth in appellant's brief and find them to be irrelevant. *Henderson v. State*, 251 Ga. 398 (306 SE2d 645) (1983).

4. Appellant contends that the court's ordering him to produce a list of witnesses was erroneous. However, the witness list was ordered after both sides invoked the rule of sequestration. It was within the court's discretion to order production of a list of defense witnesses in order to enforce the rule of sequestration. Therefore, this enumeration is without merit.

5. Appellant also complains that the trial judge did not recess court until 10:00 p.m. every night for four nights. As the state points out, since the court reporter did not note the time of recess in the transcript there is no record of the length of the proceedings each

day. There is one instance in the record of objection by the defendant to the schedule. We assume that if the length of the trial day caused physical or mental exhaustion in the participants, this will not recur on retrial.

6. On retrial appellant's counsel called Kenneth Frady as a witness. Kenneth Frady was the witness whose perjured testimony was the basis for the reversal of the appellant's first conviction. Appellant's counsel examined Frady as to the events leading up to his testimony at appellant's first trial. At the first trial Frady testified that his brother, Michael Denny, and appellant put a man who was bound and gagged in Frady's car which appellant had borrowed for $300. He further stated that when the car was returned three days later, he asked appellant what happened to the man and was told that appellant choked him to death and abandoned the body. It was later found that Frady had been incarcerated in Cobb County at the time of the killing, and this court found that his testimony was entirely fabricated. *Fugitt v. State*, 251 Ga., supra.

At the second trial Frady testified that Ed McElhenney, an investigator with the Clayton County District Attorney's office, had told him what to say. He also testified that McElhenney told him that if he did not testify he was going to charge Frady, who was seventeen or eighteen at the time, with kidnapping and murder. At the time of these conversations Frady was being held in the Clayton County jail. He testified that he was taken to the district attorney's office on several occasions and was awakened and taken to the district attorney's office at 4:00 a.m. on one occasion.

On cross-examination Frady was asked about his criminal record and questioned about the perjury. Frady testified that on Halloween afternoon 1982, he made a tape for appellant's counsel confessing the perjury and alleging the participation of the district attorney's office in the events leading up to the perjury at the appellant's first trial in September 1982. On November 12, 1982, Frady had a conversation with McElhenney which was taped. Frady was tried for perjury.

Over strenuous objection by appellant's counsel, the tape of Frady's November 12 conversation with McElhenney was admitted with only a reference to appellant's first conviction and death sentence being deleted. Although the court gave limiting instructions that the tape would be considered only for impeachment purposes, there were several matters outside the scope of the direct examination which were highly prejudicial to appellant. McElhenney said to Frady during this interview, "And before you sat down there and talked about the murder to me and Capt. Graves, you and I had had only one conversation and that was concerning the fact that your brother was hired by Bill Wallace to kill a witness, do you remember telling me that?" Later, in answer to a question from McElhenney, Frady

said that appellant's counsel Phil Ruppert told him that he would let Frady know before giving the Halloween tape to the district attorney so that Frady would have a chance to leave town. He told Frady to lay low. He said Ruppert also promised to help him "beat" the perjury case and to give him money to leave town.

These statements were not relevant to the impeachment of Frady and were highly prejudicial. In particular, the statement regarding Frady's brother being hired by appellant to kill a witness has no possible relevance to Frady's credibility and is an impermissible introduction of an independent crime. Before evidence of an independent crime is admissible two conditions must be met. First, there must be evidence that defendant was the perpetrator and, second, there must be sufficient similarity between the two crimes so that proof of the former tends to prove the latter. *French v. State*, 237 Ga. 620 (229 SE2d 410) (1976); *Bacon v. State*, 209 Ga. 261 (71 SE2d 615) (1952). Here, there is no admissible evidence that appellant committed the crime of hiring Frady's brother to kill a witness, simply the bald assertion by a third party. Further, there is no indication that this crime, if in fact committed and if committed by appellant, bears any similarity to the crime for which appellant was on trial. Since this evidence was not relevant to impeach Frady and was not admissible to show motive, scheme or plan, the only purpose was to show bad character or criminal propensity. In the absence of interjection of the issue of character into the trial by appellant, the evidence was inadmissible. *Walraven v. State*, 250 Ga. 401 (297 SE2d 278) (1982).

The admission of the tape constitutes reversible error. The error is magnified by the fact that a transcript of the tape gave advance notice and permitted thorough study of its contents.

7. We need not address the question whether a new sentencing trial must be held on the basis of a final enumeration of error since we have found reversible error in the guilt-innocence portion of the trial. Appellant complains that testimony concerning an escape attempt allegedly planned by appellant with the help of his attorney's paralegal was allowed. The appellant and the paralegal were in fact brought to trial for the attempted escape and acquitted by a jury. The admission of this testimony would be reversible error. Since we do not reverse on this basis, we need not consider whether appellant's failure to object to this testimony precludes his enumerating it as error on appeal.

*Judgment reversed. All the Justices concur, except Marshall, P. J., and Weltner, J., who dissent as to Division 6 and the judgment.*

WELTNER, Justice, dissenting.

The majority reverses this, Fugitt's second conviction and sen-

tence to death, principally upon the prior statements of one Frady.

It is this same Frady who was the cause for the first reversal, wherein we observed: "Here, there can be no doubt of any kind that Frady's testimony in every material part is purest fabrication. It cannot be said, therefore, that the new evidence establishing his perjury is 'merely impeaching.' To the contrary, it goes to the heart of our system of criminal justice, and we find that a new trial must be ordered. 'We do so because we cannot and will not approve corruption of the truth-seeking function of the trial process.' *Williams v. State*, 250 Ga. 463, 466 (298 SE2d 492) (1983)." *Fugitt v. State*, 251 Ga. 451, 453 (307 SE2d 471) (1983).

Notwithstanding what we said there, Fugitt called this same Frady as *his witness* — not in rebuttal of any state's evidence, but in an apparent effort to show prosecutorial misconduct. Having done so, Fugitt should not now be heard to complain of the state's impeachment of Frady, nor of the admission of any prior statement of Frady which would serve that purpose.

It was Fugitt who seized this corrupt fruit. It was his knowing and intentional choice. He cannot now complain of its poison.

I am authorized to state that Presiding Justice Marshall joins in this dissent.

DECIDED JUNE 19, 1985 —
REHEARING DENIED JULY 2, 1985.

*Philip L. Ruppert,* for appellant.

*Robert E. Keller, District Attorney, William L. McKinnon, Jr., Assistant District Attorney, Michael J. Bowers, Attorney General, Paula K. Smith, Assistant Attorney General,* for appellee.