SIVELL *v.* HOGAN, administratrix.

1. At common law the general rule was that when a seal was affixed to an instrument there was a conclusive presumption of law that it was founded upon a consideration. Civil Code, § 3656, is merely a codification of the common law.

2. The fact that a party endeavoring to enforce a contract under seal and governed by the general rule may himself introduce evidence showing that the

.. contract was in fact without consideration furnishes no reason for not en-
forcing it.

3. A unilateral contract within the statute of frauds becomes mutual and bind-
ing upon the party not originally bound, if he does any act which would
take the transaction out of the operation of the statute so far as he is con-
cerned; and where he thus becomes bound, the other party can not insist
that the contract is invalid because the obligation of both was not originally
in writing.

4. *A* signed a writing agreeing to deliver to *B*, at a time and place stated, and
at a price named, goods exceeding in value $50. *B* did not agree in writing
or otherwise, either at the time the above paper was signed or thereafter, to
pay for the goods. The time for delivery passed without *B* doing anything
to bind himself to pay for the goods. After that date *B* tendered the price
and demanded the goods. *Held*, that *B* could not maintain against *A* an
action for damages for failure to deliver at the time and place fixed in the
writing. The right of *B* to demand an enforcement of the obligation de-
pended upon his doing some act, prior to the time fixed for delivery, which
would bind him to pay in the event of delivery.

Submitted November 21,—Decided December 10, 1903.

Action for breach of contract.     Before Judge Longley.     City
court of LaGrange.     June 17, 1903.

*Harwell & Lovejoy*, for plaintiff in error.
*J. R. Terrell* and *Henry Reeves*, contra.

COBB, J.     T. M. Hogan brought suit against E. M. Sivell, for
damages claimed to have resulted from the breach of an alleged
contract of which the following is a copy:

" Georgia, Harris Co.     Know all men by these presents, that I
have this day sold T. M. Hogan 10 bales of cotton averaging 500
lbs. each, at 7 cents per pound, basis middling threes (Inman's
classification); said cotton to be delivered in Chipley, Ga., by Nov.
1st, 1900.     Witness my hand and seal this 9th day of July, 1900.
E. M. Sivell, L. S."

The defendant pleaded that the instrument sued on was with-
out consideration and wanting in mutuality, and therefore void,
that the contract, if a contract at all, was a transaction in cotton
futures; and that any promise made by the plaintiff to pay for the
cotton was void under the statute of frauds. The petition alleged
that the plaintiff tendered to the defendant, on November 1, 1900,
the agreed price of the cotton, and that the defendant refused to
accept the money and deliver the cotton. The plaintiff died be-
fore trial, and his administratrix became a party in his stead. The
court directed a verdict for the plaintiff, and the judgment over-

ruling the defendant's motion for a new trial was reversed by this court.   115 *Ga.* 667.   On the second trial the jury found for the plaintiff $100, with interest from November 1, 1900.   The defendant's motion for a new trial was overruled, and he excepted.

1. At common law a seal imported a consideration, and as a general rule a contract under seal was not open to an attack that it was without consideration.     21 Am. & Eng. Enc. L. (1st ed.) 898; 2 Bl. Com. (Cooley) *446; 6 Am. & Eng. Enc. L. (2d ed.) 682; 762 – 763, 798 ; 11 Am. Dig. (Cent. ed.) § 406 ; Broom's Com. L. 284 – 285.   The rule, however, was subject to important exceptions.   It did not apply to contracts in restraint of trade, or those in which the consideration was fraudulent or illegal.   See 21 Am. & Eng. Enc. L. (1st ed.) 899.   Many States have abrogated the common-law rule.   See 6 Am. & Eng. Enc. L. (2d ed.) 798.   The common-law rule was applied by this court in the cases of *Rutherford* v. *Baptist Convention,* 9 *Ga.* 54, and *Justices* v. *Smith,* 13 *Ga.* 502, and recognized in *Bruton* v. *Wooten,* 15 *Ga.* 570.   There has never been any legislative enactment on the subject in this State. The first code codified the common law with reference to this matter, and the provision of that code has been incorporated into the Civil Code, §3656, which is as follows:    " In some cases a consideration is presumed, and an averment to the contrary will not be received.   Such are generally contracts under seal," etc.   The case of *Smith* v. *Smith,* 36 *Ga.* 184, was decided since the code. The question there was whether the court would decree performance of an agreement of settlement of an estate.   The agreement was under seal, and Judge Harris, in discussing the question of consideration, said:    " Is the agreement on consideration ?   It purports to be under seal.   The solemnity of a sealed instrument imports consideration, or, to speak more accurately, it estops a covenantor from *denying a consideration,* except for fraud."

The cases of *Neil* v. *Bunn,* 58 *Ga.* 583, and *Sims* v. *Lide,* 94 *Ga.* 553, contain a bare intimation that the presumption of a consideration arising from the presence of a seal would be a rebuttable one, but in neither was the point made or passed upon.   In none of these cases was the provision in the code cited or referred to. The only case which deals directly with the section of the code is *Weaver* v. *Cosby,* 109 *Ga.* 310, where Mr. Justice Lewis apparently treated the provision as meaning that a seal was merely

prima facie evidence of a consideration ; saying that an instru-
·ment under seal then being dealt with " raised a strong presump-
tion of law " that it was founded upon a consideration.   Inas-
much, however, as it was held in that case that the evidence of-
fered to rebut the presumption was not sufficient for this purpose,
the decision is not to be regarded as binding authority for the
proposition that the seal would not be conclusive upon the ques-
tion of consideration.   It is manifest, in our opinion, that the sec-
tion of the code is but a codification of the common law, and that
the word *generally*, used therein, was inserted for the purpose of
excluding the exceptions of the common law, as well as any other
exceptions which might have been or might be made in the law
of this State.   An exception has been made in favor of deeds.
Civil Code, § 3599.   And before the adoption of the code it was
held by this court that failure of consideration could be pleaded
to a note under seal.   *Albertson* v. *Halliburton*, 16 *Ga.* 377.   We
are not, however, prepared to adopt the reasoning upon which this
decision was founded, that the common-law rule related only to
such instruments under seal as were known to the common law as
specialties, there being no such thing at common law as a promis-
sory note under seal.   We rather prefer the view of the Supreme
Court of South Carolina, that a seal raised a presumption of the
existence of a consideration at the time the contract was entered
into, but not that it had not since failed either wholly or in part ;
and that while *want* of consideration could not be pleaded, *fail-
ure* might.   See *Koster* v. *Welch*, 35 S. E. 435, and cit.   Our
code defines a specialty to be a contract under seal.   Civil Code,
§ 3634.   We are not, however, to be understood as definitely
committing ourselves at this time to the proposition that even
want of consideration can not be pleaded to a promissory note
under seal, though this would seem to be true.

· 2.   It is said, though, that this rule ought not to be applied in
the present case, because the plaintiff undertook to show what
was the real consideration, and from the evidence which she in-
troduced it appeared that the contract was in fact without any
consideration.   We do not think the question of want of consid-
eration was open to examination by either party.   The presump-
tion raised by the presence of the seal was one of law, and evi-
dence by either party as to what was the real consideration was

immaterial, unless it showed that the consideration was immoral or illegal.    It is true that when the case was here before it was ruled that the particular evidence offered by the plaintiff to show a promise on the part of her intestate to pay for the cotton was not open to the objection that it was irrelevant.    But the court was not then dealing with the question we have been discussing, but with the plaintiff's right to show a promise to take the cotton; so as to relieve against the unilateral character of the instrument sued on.    The fact that the evidence was introduced on the last trial can not be used by the defendant to rebut the conclusive presumption of the law that the contract was founded on a consideration of some kind; and there being nothing in the evidence to show that the consideration was not such a one as the law would recognize, the contract must be deemed to have been founded upon a sufficient consideration.

3.    The contract as it originally stood was wanting in mutuality.    See *Harrison* v. *Wilson Lumber Co.*, 119 *Ga.* 6, and cit. It is well settled, however, that a unilateral contract, though required by the statute of frauds to be in writing, may be made mutual by the other party's doing some act which would take the case out of the statute, so far as he is concerned.    *Perry* v. *Paschal*, 103 *Ga.* 134, and cit; Hammon on Con. § 337; Harriman on Con. § 103; 1 Parsons on Con. (8th ed.) * 451; Bishop on Con. (en. ed.) § 87; Broom's Com. L. (9th ed.) 300–301.    There was, however, in the present case no evidence that Hogan had done anything which would take the case out of the statute of frauds so far as he was concerned.    It was sought to accomplish this purpose by the introduction of a paper of which the following is a copy: "Georgia, Harris County.    Know all men by these presents, I have this day purchased of E. M. Sivell ———— bales cotton, averaging five hundred (500) pounds each, at seven (7) cents per pound, basis middling threes (Inman's classification); said cotton to be delivered in Chipley, Ga., by Nov. 1st, 1900.    Witness my hand and seal this ———— 1900.    [Signed] T. M. Hogan."    This paper did not have the effect contended for by the plaintiff.    It did not specify the number of bales of cotton, nor was it dated, nor was there anything on the face of the paper to connect it with the writing signed by Sivell.    No other writing was offered to so connect it, and parol evidence would not have been admissible.    See, in this connection,

*Turner* v. *Lorillard Co.*, 100 *Ga.* 645; *Augusta So. R. Co.* v. *Smith*, 106 *Ga.* 864.

When the case was here before, it was ruled that it was necessary for the plaintiff to prove the allegations of the petition that her intestate actually tendered the price of the cotton to the defendant. On the second trial there was evidence of a tender on November 15. It is insisted now that time was of the essence of the contract, and that as no tender was made on November 1, the date fixed by the contract for the delivery of the cotton, the plaintiff could not recover. Time is of the essence of a contract, when the parties so stipulate, or when the nature of the contract is such as to indicate that this must have been their intention. Harriman on Con. § 285 ; *Sneed* v. *Wiggins*, 3 *Ga.* 94; 11 Am. Dig. (Cent. ed.) §§ 938–939. When Sivell signed the writing agreeing to deliver to Hogan ten bales of cotton at Chipley, Ga., on November 1, 1900, Hogan was not bound to take and pay for the cotton, the contract being within the statute of frauds and he not having signed any obligation in writing to do so. Consequently, as the matter then stood, Hogan was not bound to take the cotton even if Sivell had delivered it at the time and place agreed on. Sivell was bound by the terms of the contract so far as the statute of frauds was concerned, he having signed it. But as Hogan was under no obligation to take and pay for the cotton, Sivell was at liberty to withdraw what at this stage of the transaction was a mere offer to deliver the cotton upon the terms stated in the writing, provided the withdrawal was communicated to Hogan before he did anything which would make him bound to accept the offer and pay for the cotton. But if Hogan did any act which would take the case out of the statute of frauds so far as he was concerned and make the contract binding upon him, then what was before a mere offer would become a contract binding upon both parties, and neither would be at liberty to withdraw without the consent of the other. Hogan might have become bound by a payment of the amount to Sivell before the time for delivery arrived. He might have become bound by signing a writing agreeing to pay the amount stipulated in the event the cotton was delivered at the time and place fixed. It is possible that he might have become bound to pay by a tender of the amount stipulated on the first of November, or by a continuing tender prior

to that date. If he had become bound in any of these ways, it would then have been incumbent on Sivell to deliver the cotton at the time and place agreed on. Sivell, however, being chargeable with notice that at the time he signed the paper Hogan was not bound to take and pay for the cotton, he was under no obligation to complete his offer by delivery, unless Hogan did something to render himself bound to accept it. Consequently, unless Hogan did something to render himself bound, Sivell was not liable to an action for damages for a failure to deliver the cotton at the time and place stated in his offer. By signing the paper Sivell placed himself in a position where he was required either to withdraw his offer before Hogan did something to render himself bound, or to deliver the cotton and complete the offer in the event Hogan became bound to an acceptance. In this sense time was of the essence of the contract, and if Hogan did nothing, on or before November 1, to render himself bound, Sivell had a right to treat the transaction as at an end.

Under this view of the case, the verdict was contrary to the evidence, and the court should have granted a new trial. The foregoing discussion covers all of the assignments of error with which it is necessary to deal.

*Judgment reversed. All the Justices concur.*