## 1385. SIMS v. SCHEUSSLER.

1. The charge of the court submitted fully and clearly the law pertinent to the issue.
2. Where it is sought to impeach a witness by proof of contradictory statements, the jury may in its discretion believe the witness, whether corroborated or not.
3. The constructive notice implied from the record of a mortgage does not necessarily import that the mortgagee has actual knowledge of such mortgage, or any interest in the property upon which the mortgage is alleged to create a lien.
4. Either want of consideration or failure of consideration may generally be pleaded to a contract under seal. There being no requirement that a cancellation of a mortgage should be under seal, the court did not err in refusing to charge, as to a cancellation under seal, that the law conclusively presumes that the mortgagee received a consideration for the cancellation of the mortgage.
5. No error required the grant of a new trial.

Complaint, from city court of Floyd county—Judge Hamilton. August 31, 1908.

Argued November 24, 1908.—Decided March 23, 1909.

*Denny & Harris,* for plaintiff.

*C. N. Featherston, Dean & Dean,* for defendant.

RUSSELL, J. When this case was here before (2 *Ga. App.* 466 (58 S. E. 693)), the judgment refusing a new trial was reversed upon the ground that the court erred in repelling a certified copy of a mortgage, duly probated and recorded, this court holding, that "a copy of an instrument required by law to be recorded, taken from the proper registry and duly certified, is presumptive evidence of the existence of an original;" and that "where it appears that due notice has been served on the mortgagee to produce the original mortgage, and that the mortgagor resides beyond the jurisdiction of the court, a sufficient foundation is laid to admit as secondary evidence a properly certified copy of the mortgage." Upon the trial now under review, the errors of the previous trial were corrected, and the jury again returned a verdict in favor of the defendant. The plaintiff's motion for new trial complains of errors in the charge of the trial judge, and of his refusal to charge in accordance with certain requests. When the case was here before, the judge's charge was approved, as submitting fairly, fully, and clearly the issues involved and the law pertinent thereto, and a comparison of the charge in the record now before us with the

charge in the record of the former case discloses that the charge in the instant case is practically identical with the charge which we approved. The only changes made are, that the judge instructed the jury in the present instance on the subject of impeachment, and included in his charge a principle of law referred to in our previous decision, and supported by the rulings of the Supreme Court in *Daniel* v. *Royce,* 96 *Ga.* 566 (23 S. E. 493); *Lowenstein* v. *Meyer,* 114 *Ga.* 709 (40 S. E. 726); *Atlanta Suburban Land Corporation* v. *Austin,* 122 *Ga.* 374 (50 S. E. 124). As we have heretofore critically examined the charge of the court and found no error in what was said by the judge, we deem it unnecessary to consider the assignments of error which are based upon his charge, and we shall address ourselves to what was left unsaid, so far as the omission of the judge to charge in accordance with the requests presented in the record is alleged to be error.

2. In the 5th ground of the motion for new trial it is insisted that the court erred in refusing to charge the jury that "if a witness in a case is impeached on a matter material to the issue, by proof of conflicting statements made by the same witness, then you could not accept the testimony of such witness on any subject, unless she was corroborated by circumstances or other unimpeached witness." The plaintiff insists, that the request to charge contains a sound principle of law, and one applicable to the facts of the case; that the defendant had testified during the trial that Judge J. H. Lumpkin was not her attorney and did not represent her at the time the note was given; that in her testimony taken by interrogatories she stated that Judge J. H. Lumpkin was her attorney at the time and represented her; and that these conflicts were not explained by her. The plaintiff further contends that the testimony showed that the defendant had made conflicting statements as to whether her husband was or was not trying to protect her, and endeavoring to save the proceeds of his stock of hardware for her, and that this conflict was not explained. The insistence of the plaintiff is that the jury should have been instructed that unless these conflicts were explained, the testimony of the witness so impeached could not be received, unless corroborated. We think the request was properly refused. We have already adverted to the fact that one of the additions made to his former charge by the judge of the city court was an instruction

upon the subject of impeachment. Upon this subject the court charged: "A witness may be impeached by disproving facts testified to by him, or by contradictory statements previously made. The credibility of a witness is a matter wholly for the jury." We think that in the absence of a request more exhaustively embodying the law or more fittingly adjusted to the evidence, the charge upon this subject is not only correct, but ample. If the plaintiff had desired the general presentation of the subject, given by the judge, to be more specific and exhaustive, a proper request should have been made. The judge did not err in refusing the request as made, because he was not required to correct the request so as to perfect it, and, in the form in which it was presented, it did not set forth a correct principle of law. The court clearly told the jury that the credibility of a witness is a matter wholly for the determination of the jury, and that they had the right to impeach the witness by contradictory statements previously made. But he would not have been authorized to tell the jury, as requested, that if a witness was impeached by proof of conflicting statements, and if the conflict was not explained, they could not believe the testimony of such witness on any subject, unless corroborated by circumstances or other unimpeached testimony. This would have been a direction by the court to the jury, that if they believed the witness had made contradictory statements which she had not explained, they must disbelieve her entirely; and the court has no right to take away from the jury any portion of their prerogative in determining the credibility of witnesses sought to be impeached. The whole question of impeachment is one for the jury; and while it would have been proper for the judge to charge that the jury would be authorized to disregard all of the testimony of a witness whom they believed to be impeached by proof of contradictory statements as to a matter material to the issue, yet to have told them that if they believed from the evidence that the witness sought to be impeached had made unexplained contradictory statements they *could* not accept the testimony of such witness would have been an invasion of the jury box by the judge. In *Central R. Co.* v. *Phinazee,* 93 *Ga.* 488 (21 S. E. 66), a similar request was made, and was held to have been properly refused for an additional reason. In that case the request preferred was, "If the jury should believe that any of the witnesses sworn for the plain-

tiff have been successfully impeached or contradicted in material matters sworn to by him or them, then the jury can disregard the whole testimony of such witness, whether it be the plaintiff or other person." Chief Justice Bleckley, delivering the opinion of the court, held that the request (as is the request involved in the case at bar) "was open to the objection that it would apply as well to a contradiction resulting from honest mistake on the part of the witness attacked, as to a contradiction due to wilful and corrupt perjury." The request is also open to the further ob-' jection pointed out by Judge Bleckley, that "it might be clear to the jury that a witness contradicted in a material matter could be fully credited as to other matters, and when this is the case, it is not a rule of law that the whole of his testimony can be disregarded. The rule of 'falsus in uno falsus in omnibus' has relation to wilful falsehood, and should be so restricted in giving it in charge to the jury. *Skipper* v. *State,* 59 *Ga.* 63; *Ivey* v. *State,* 23 *Ga.* 576." The request to charge in the present instance does not call the attention of the jury to the principle that contradictory statements must have been made knowingly and wilfully.

3. In the 6th ground of the motion for new trial it is insisted that the court erred in refusing to charge as follows: "Where a mortgage on a stock of goods is duly probated for record,— that is, executed before the proper witness,—and is recorded in the place and manner required by law, such record is notice to the world of the existence of such a mortgage." And in the 7th ground of the motion complaint is made that the court refused to charge that, "where a mortgage is executed by a husband to his wife, is properly probated and properly recorded, such record, from its date, is constructive notice to the mortgagee named, as well as the rest of the world, of the existence of such mortgage." We treat these two assignments together, because they present practically the same point. The question is whether the charge is pertinent to the issue in the case, and whether the plaintiff in error was injured by the court's omission to give what is admittedly a principle of law correct in the abstract. We can not see how the rights of the plaintiff could have been affected by the failure of the court to call the attention of the jury to the doctrine of constructive notice. The clear-cut issue presented to the jury by the evidence was whether the defendant had actual notice of all the details of

the transaction leading up to the execution of the note which she admitted she had signed. The conflict in the evidence was acute as to almost every material point, but there is absolutely no conflict as to the fact that the mortgage in question was executed by the defendant's husband and recorded; and, therefore, there could be no denial that she had constructive notice of its existence. The case, however, is of such a nature that the only practical issue is whether Mrs. Scheussler, the defendant, had *actual* notice of the existence of the mortgage, if it was necessary to the plaintiff's case to show that there was a mortgage at all. It was necessary that the plaintiff should show that the defendant, by the cancellation of a mortgage or otherwise, purchased the stock of goods which had been sold by the plaintiff to the defendant's husband, and that she thereby obtained as her property a stock of goods which it would be to her interest and benefit to protect by giving the note to the plaintiff. The only purpose of the introduction of the mortgage, so far as benefit could result to the plaintiff from its introduction, was to use it as basis for proof that in the cancellation of the mortgage Mrs. Scheussler became the owner of the stock of goods which was liable to be subjected to the payment of the note that the plaintiff held against her husband. The omission to give the charge as requested could not have been harmful; because, even if Mrs. Scheussler had had no notice whatever of the mortgage, and even if it had never been recorded, and she had purchased the stock of goods, and had then for the first time ascertained that her husband had executed and recorded a mortgage in her favor, her cancellation of the mortgage (of the existence of which up to that time she had had no knowledge, either actual or constructive) might be a circumstance from which it could be inferred that, having bought her husband's stock of goods, she would have had such an interest in protecting her property from the attacks of Sims as would warrant her buying her husband's notes. She may have believed them to be a lien upon her property. The question involved was not one of priority of liens, but merely one of fact, as to whether Mrs. Scheussler had in any way become the owner of the stock of goods which had been sold by Sims to Scheussler, and for the purchase-price of which Scheussler was still indebted to Sims. We think, therefore, that not only was the plaintiff not injured by the failure of the judge to comply with

the requests on the subject of constructive notice, but these requests were really not pertinent to the issues in the case.

4.  The court refused to charge: "If you should find, from the evidence, that the defendant ever executed a paper' in the form of a cancellation of a mortgage from her husband to herself, and if you find further that said cancellation was executed by the defendant under seal, then the law conclusively presumes that the defendant received a consideration in said transaction, and the defendant will not be heard in a court of justice, by herself or any other witness, to deny that she received said consideration."  The plaintiff insists, that the charge requested should have been given, because he had introduced in evidence a certified copy of the cancellation signed by the defendant, in which she declared that she cancelled the mortgage in consideration of the transfer to her by her husband of a certain stock of goods described in the mortgage, which cancellation was executed before a notary public and under her seal; and that, because it is under seal, she is estopped from asserting that the cancellation was without consideration.  If the plaintiff's contention is sound, the charge should have been given; because if there was a consideration for the cancellation of the mortgage introduced in evidence, there is ample evidence to warrant a finding that the same consideration constituted a consideration for the note sued upon.  The exact question has not been decided by the Supreme Court, but it is clear to our minds that in this State, where there are no distinct courts of law and courts of equity, and where the courts of law may afford equitable relief, there is no reason why the maker of an instrument under seal should be estopped from setting up that the obligation was without consideration.  The fact that it has been held that § 3656 of the Civil Code declares that an instrument under seal *generally* imports a consideration does not lead us to the conclusion that by the terms of § 3656 the makers of many instruments under seal which might be mentioned are estopped from pleading and proving that the instrument in question was without consideration. Especially must it be true that lack of consideration may be proved as to an instrument executed under seal which is not required to be executed with such formality.  Even if the law required that the cancellation of a mortgage should be under seal, we think that, for the reasons stated by Starnes, J., in the well-considered case

of *Albertson* v. *Halloway,* 16 *Ga.* 379, Mrs. Scheussler had the right, regardless of the fact that the cancellation was executed under her seal, to show that the cancellation was without consideration. What is said by Justice Cobb in *Sivell* v. *Hogan,* 119 *Ga.* 170 (46 S. E. 67), upon the point now before us is obiter, because the learned judge concludes his remarks upon the subject by saying, "We are not, however, to be understood as definitely committing ourselves at this time to the proposition that even want of consideration can not be pleaded to a promissory note under seal, though this would seem to be true." Thus, while he previously said that the court was not prepared to adopt the reasoning upon which the decision in the *Albertson* case, supra, rests, the court declined to overrule that earlier case. For the reason that the earlier case is controlling, as well as for the reason that it has more than once been held that §3656 of the Civil Code is an adaptation from the common law, it seems to us that the force of the decision in the *Albertson* case, supra, is not affected by the consideration that the decision was rendered prior to the code. The language of that section, so far as it relates to sealed instruments, is: "In some cases a consideration is presumed, and an averment to the contrary will not be received. Such are *generally* contracts under seal, and negotiable instruments alleging consideration upon their face, in the hands of innocent holders without notice," etc. The use of the word "generally" is to our minds significant of the fact that the framers of the code had in mind the decision in the *Albertson* case, and the distinction there drawn between two separate classes of sealed instruments, rather than the distinction drawn by the South Carolina court, in *Koster* v. Welch, 57 S. E. 95 (35 S. E. 435), between *want* of consideration, which could not be pleaded, and failure of consideration, which might be pleaded, and which is adverted to by Judge Cobb in *Sivell* v. *Hogan,* supra. Especially must this be true when we consider that the *Albertson* case had been decided before the laws of Georgia were codified, and was, no doubt, perfectly familiar to the distinguished jurists who were engaged in that labor, whereas the decision in the *Koster* case was not rendered by the Supreme Court of South Carolina until March, 1900. In the absence of binding authority, therefore, to the contrary, we must believe that by the use of the word "generally," in the code section, it was at least intended to pro-

vide for exceptions from the general rule which conclusively presumes a consideration where an instrument is executed under seal, and that the decision in the *Albertson* case is the law defining the cases in which the presumption may be rebutted. Therefore, the request to charge that the law presumed that Mrs. Scheussler had received a consideration, by reason of the fact that she cancelled the mortgage under her seal, and that she would not be heard in a court of justice to deny that she received consideration, would, in our opinion, have been properly refused even if the law had required mortgages to be cancelled under the seal of the mortgagee. See *Lacey* v. *Hutchinson,* post, 865 (64 S. E. 105). Inasmuch, however, as §2737 of the Civil Code does not require the formality of a seal, but provides only that "any mortgagor in this State, who may have paid off his mortgage, may present the same, together with the order of the mortgagee or transferee, directing that the mortgage be canceled and record the order across the face of the record, to the clerk of the superior court of the county or counties in which the same is recorded," and that such clerk shall thereupon write the word "satisfied" across the face of the record in the mortgage, together with the date of the entry, and sign his name officially, there is no view in which it can be held that this defendant's right to plead lack of consideration would be affected. In *Martin* v. *Bartow Iron Works* (U. S. Dist. Court), 35 *Ga.* 320, 325 (Fed. Cas. 9157), Judge Erskine held, that it is "the settled law of Georgia that, to an action on what is commonly known as a sealed note, or single bill, the defendant may plead either a total or (by statute) a partial failure of consideration," and consequently he applied it in the United States court in Georgia as a rule of the local law, controlling as to an instrument made and to be performed in this State. In the trend of modern jurisprudence, as well pointed out by Judge Lumpkin in *Lowe* v. *Morris,* 13 *Ga.* 147, the importance of the seal as an affix to one's signature and as a mark of identity has been greatly diminished. In that case each member of the court wrote an opinion; and one who is interested either in the origin and history of seals or in the reasons assigned for their use will be richly repaid by a perusal of the delightful opinion of Judge Lumpkin, or may even more enjoy the choice satire of the dissenting opinion of Judge Nisbet, who thought the writ of error should be dismissed because the seal

of the court was not attached to it, and defended the forms of the common law (which forms he declared to be substantial, because consecrated by time and usage, although they might be in themselves unmeaning or even ridiculous), and, in decrying the prevailing desire for change, declared that the vocation of the age "seems to be to reform everything from the religion of Heaven down through a descending series almost infinite, to a certiorari." Judge Lumpkin, in concurring with Judge Warner, who delivered the opinion of the court, shows that the seal goes back to Judah, one of the twelve Princes of Israel ("Moses' Reports, Book Genesis, c. 38, v. 18"), and develops that Ahasuerus was a postmaster-general in his day, because he sent his letters by post, and says "I admit that many *old* things may be good things,—as old wine, old wives, ay, and an old world too. But the world is older, and consequently wiser, now than it ever was before. Our English ancestors lived comparatively in the adolescence, if not the infancy of the world. . . And yet we, who are 'making lightning run messages, chemistry polish boots, and steam deliver parcels and packages,' are forever going back to the good old days of witchcraft and astrology, to discover precedents for regulating proceedings of courts, for upholding seals and all the tremendous doctrines consequent upon the distinction between sealed and unsealed papers, when *seals de facto* no longer exist!"

5. It is insisted that the court's charge to the jury entirely failed to present one of the main contentions of the plaintiff, and that therefore it was error to refuse the request to charge, "If you find from the evidence that Mrs. Scheussler had a mortgage on the stock of goods of C. S. Scheussler, that plaintiff attempted to collect his notes for $2,460, that he employed counsel and threatened to attack the mortgage, that thereupon defendant executed the note sued on, then I charge you that this note was a valid contract, and can be enforced against the wife, under the laws of Georgia." It is unnecessary for us to rule whether the court could properly have given this request without altering its verbiage; for the reason that the evidence was undisputed that Mrs. Scheussler had no actual knowledge of the existence of the mortgage prior to Sims' intended attack upon it, and the employment of Judge Lumpkin to defend. Whatever conflict there may be as to other points in the case, no evidence contradicts Mrs. Scheussler's state-

ment that she had no knowledge of the mortgage prior to its record. The request, therefore, could perhaps have been rejected as not adjusted to the evidence in the particular case; because the mere fact that there may have been a mortgage recorded in favor of Mrs. Scheussler would not necessarily show that it had ever been accepted by her as security for her debt. If a mortgage is recorded, this is generally evidence of its delivery to the mortgagee, and of his acceptance. But in a case where it might be contended that a mortgagee was prevented from asserting his rights against a debtor who had made a mortgage in his favor without his knowledge or consent, it certainly could not be held that the mortgagor, by such a gratuitous act, could compel an unwilling creditor to forego his existing rights, and be involuntarily remitted to the security afforded by a second or even a third mortgage. The request upon this point was not sufficiently specific, unless the statement that the defendant had a mortgage had been followed by the further statement that by the cancellation of that mortgage the defendant had acquired property which it was her interest to retain. But the real point raised by the request was fully presented to the jury by the court in that portion of the charge in which the jury were instructed that "a wife can buy notes of her husband, or she can make a valid obligation in settlement of such notes, if they appear to have been purchased to protect property to which she has title or interest." This statement of the principle upon which the defendant's case depended is full and clear, and is aptly adjusted to the evidence, because the legitimate purpose of the evidence in behalf of the plaintiff was to show that the settlement of the husband's notes by the wife was occasioned by no intention on her part to pay his debts or to assume his obligations, but was intended to protect property to which she had title or interest. The instructions given in lieu of those requested are in the language used by this court in the prior decision of the case. We held, when the case was here before, that the plaintiff would be entitled to recover if he proved that the consideration for the note arose from Mrs. Scheussler's attempt to protect any of her property rights. The instruction of the trial judge upon this subject is in accord with our ruling. The request the refusal of which is the ground of complaint in the 10th

ground of the motion for new trial is, for the reasons just stated, likewise covered by the charge of the court.

6. As already stated, we approved the charge of the court when the case was here before. By so ruling, of course, we did not intend to be understood as standing sponsor for the exact phraseology employed; nor did we intend to say that the language employed is not subject to verbal criticism; but we hold now, as we held then, that the instructions were remarkably apt, and the language employed so clearly intelligible to the jury that we are warranted in saying that the charge submitted the issues and the law fairly, fully, and correctly. The fact that the words "in good faith" were inaptly transposed or incautiously interjected into the wrong portion of the instructions of the judge did not mislead the jury. The court charged the jury that "if you find from the evidence that Mr. Scheussler was justly indebted to Mrs. Scheussler, and that there was a conflict between the claims of Mrs. Scheussler and a claim of Mr. Sims on the property of the husband; and if you find that in order to settle these conflicting claims, it was necessary to protect her as a creditor of her husband, that she took all the claims of Mr. Sims, and thereby became the owner of the claims, and the transaction did in good faith benefit her, and that the note sued on was given solely to protect her interests and on her own account, then I charge you that she would be bound on the notes sued on, and you would find your verdict for the plaintiff." The same language was used when the case was here before, but it appeared to us then, as it does now, that, viewing this instruction in connection with other portions of the charge, it was plain to the jury that the mistake of the judge was merely a lapsus linguæ, and the jury understood that what the court meant to say was that if the transaction was entered into in good faith, to benefit her (that is, she believing that it would benefit her), the defendant would be bound on the note.

7. The first four grounds of the motion for a new trial covered the usual general grounds, and a review of the evidence convinces us that a reversal of the judgment, based upon these grounds, would not be authorized. It appears that the plaintiff and the defendant's husband were partners in a hardware business in Atlanta. The plaintiff sold his interest to the defendant's husband and received notes to the amount of $2,460. Failing to collect

these notes, he accepted in lieu thereof the note of Mrs. Scheussler, the wife of his debtor, for $1,200 and a certain paper disclaiming a legal obligation but acknowledging a moral obligation to pay Sims, whenever he was able, the amount of loss he had sustained. As to these points there is no conflict in the evidence. Upon the filing of the plaintiff's suit the defendant, Mrs. Scheussler, admitted a prima facie case, and assumed the burden of proving that the note was void because it was without consideration and was given merely as a colorable device for assuming the indebtedness of her husband. In several portions of the charge the court instructed the jury that the burden rested upon the defendant of sustaining her contention by the preponderance of the evidence. So it can not be said that the jury rendered their verdict in favor of the defendant upon the idea that the plaintiff had failed to establish his case. On the contrary, the verdict must be construed as finding that the defendant successfully carried the burden and successfully rebutted the case made by the plaintiff, which, unrebutted, necessarily entitled him to a recovery.. The evidence in behalf of the plaintiff showed that the defendant, by a written contract of purchase, coincident with and a part of the cancellation of the mortgage executed by her husband in her favor, had become the purchaser of a stock of goods for which the defendant was still indebted. This indebtedness was part of the purchase-price and was evidenced by certain notes held by the plaintiff.. The defendant, being fully apprised of the condition of affairs, and acting under the advice of her counsel, and acting in her own interest (as it was apparently to her advantage to protect her property against a lien which might be set up by Sims), purchased the notes of her husband, as she had the right to do, and in payment gave a note which was the basis of the present suit. The evidence in behalf of the plaintiff would have authorized a verdict in his favor. On the part of the defendant, however, there was testimony that she never knowingly had been the holder of the mortgage which purported to create a lien upon the stock of goods in her favor, had never owned the stock of goods, had never been credited by any share in the management of the store, had never derived any profits from it, and that the note was given merely as a colorable device by which she bound herself to pay the debts of her husband. According to the defendant's testimony, she consented.

to sign the note for no other reason than that she wanted to re-
lieve the embarrassment of her husband.  Two apparently disin-
terested witnesses who were employed in the business both before
and after Sims sold his interest to Scheussler, one of whom had
had charge of the books, and the other of whom was in general
charge of the sales and the cash, testified, that the defendant never
received any monies from the business after the execution of the
mortgage or after the alleged sale, or at any other time; that
the business was conducted in the name of the husband, and that
though they were in charge of the business and conversant with all
its details, they never heard of the defendant having any interest
in the stock of goods during the entire period in which the busi-
ness was conducted.  From this testimony and from various other
circumstances which it is unnecessary to recount, we think that the
jury were fully authorized to find, that the making of the note was
nothing more than the assumption by the wife of her husband's
debt, that the various steps leading up to the execution of the
note were means adopted, in the first instance, by the husband in
his own interest, and that later on the wife, without a view to any
interest of her own, and certainly, so far as the record discloses,
without ever having received any benefit therefrom (though that
would not matter if her action was influenced by the hope of
benefit), simply to relieve the pressure of her husband's creditor,
assumed his debt and gave her note, which the husband indorsed.
The jury may have considered the circumstance of the husband's
indorsement as having some significance, in view of the fact that
the evidence fails to disclose that after having sold his business
and the stock of goods to his wife, he had no remaining assets
which would cause his indorsement to be of value.  Without
disbelieving the testimony of the eminent counsel who testified in
the case, the jury could well infer, from the nature of the relation-
ship between husband and wife, that though the circumstances and
the statement made at the exact time that the note was given were
precisely as stated in the testimony of the counsel who were em-
ployed in the case, still that it was not only possible, but even
probable, that the attorneys may have seen only the surface indica-
tions of a bona fide intention to purchase, while the wife, under
the tutelage of her husband and in wifely devotion to his interest,

may have concealed what, according to her testimony, the plaintiff was obliged to have known,—that she had no interest in the stock of goods, and, therefore, no interest of her own to protect.

No errors of law having been committed, the trial judge did not err in refusing to set aside the verdict of the jury upon issuable facts, although a different finding would have been authorized.

*Judgment affirmed.*