## 1331. SOUTHERN RAILWAY COMPANY *et al. v.* PEEK.

1. The charge of the court on the credibility of witnesses successfully impeached is in harmony with repeated decisions of the Supreme Court and of this court, and is substantially in the language of the Civil Code, § 5295.

2. Where a railway company and one of its agents were jointly sued by an employee of the railway company, to recover damages for his false arrest and imprisonment on the charge of larceny in taking coal from the company's yard, evidence that for years the employees of the company, with the knowledge and consent of the company and the agent, had made a practice of taking coal from the company's yard was admissible. This evidence illustrated both the question as to the animus furandi of the employee in taking the coal, and the quo animo of the defendants in causing his arrest and imprisonment.

3. No error of law appears. and the verdict is supported by the evidence.

Action for damages, from city court of Atlanta—Judge Reid. July 6, 1908.

Argued November 11, 1908.—Decided April 15, 1909.

*Dorsey, Brewster, Howell & Heyman,* for plaintiff in error.

*Westmoreland Brothers,* contra.

HILL, C. J. Peek brought suit in the city court of Atlanta against the Southern Railway Company and Dwyer, as one of its servants or agents, to recover damages for false imprisonment and malicious prosecution. The jury returned a verdict in his favor for $500, as damages for false imprisonment; and the defendants' motion for a new trial was overruled. Besides the general grounds, the motion alleges error in certain rulings on evidence, and in certain portions of the charge.

As to the general grounds, it may be stated that the evidence fully supports the material allegations of fact in the plaintiff's petition, to wit, that while he was engaged as an engineer in the company's yards in the city of Atlanta, he was arrested without a warrant or legal authority, by Dwyer, acting for the railway company, on the charge of simple larceny; that after his illegal arrest he was taken by Dwyer to the station-house in the city of Atlanta, and was there incarcerated for about eight hours, when he was taken before the recorder and was prosecuted by Dwyer, at the instance and under the direction of the railway company, on the charge of simple larceny, and, after a full investigation, he was acquitted and discharged by the recorder; that he had not

committed the offense of simple larceny for which he was arrested, and his arrest was entirely without probable cause, and the detention of his person and his imprisonment were without warrant or legal authority. The facts upon which the charge of larceny was based were the taking by the plaintiff, Peek, of some coal which had dropped from coal cars into the yard of the railway company, and the taking of a "sack of shorts" which he picked up, where it had fallen from one of the cars of the railway company, and which he had carried and placed in the inspector's house in the yard, and the material question was as to Peek's intention in taking these articles. He did not deny taking the articles, but did deny intent to commit a larceny in taking them. As to the coal, he proved that it had been a custom for years among the employees of the railway company to take up coal which had fallen from the cars, and that this practice was well known by the company, and no objection to the practice had been interposed by the company, and that in taking the coal he did so openly and followed the practice above stated; that this custom and practice was. not only known to the company, but was fully known to the defendant Dwyer at the time of the arrest; and that as to the sack of shorts that he had taken from where he found it in the yard, he placed it in the inspector's house for the benefit of the company. All these questions were settled by the jury in favor of the plaintiff, and, unless the court committed some material error of law which contributed to the verdict, it should not be disturbed.

There was an attempt on the part of the defendant to impeach Peek as a witness by evidence of general bad character, which attempt was met by Peek by counter evidence proving his general good character; and the evidence as to the general custom or practice by the employees of the railway company, alluded to, was admitted by the court over the objection of the defendant. The special assignments of error may be reduced to two and will be considered in their order

1. The first ground of the amended motion for a new trial objects to the following charge of the court: "If a witness is successfully impeached, then, as to the matters with reference to which he is impeached, he should not be believed by the jury, unless his evidence is corroborated by other unimpeached evidence,

or circumstances proved to your satisfaction in the case." It is contended that this charge is error, because it limits the effect of the impeachment to matters with reference to which the impeachment is sought; that while it is a question for the jury to determine as to the credibility of the witness whose evidence is impeached by proof of bad character or contradictory statements, the impeachment, if successful, goes to all of his evidence, and should not be limited to that evidence with regard to which he is charged with making contradictory statements. In addition to the excerpt above objected to, and in the same connection, the court charged that if the witness swore wilfully and knowingly falsely, his testimony should be disregarded entirely, unless corroborated by circumstances or other unimpeached evidence. The charge, as a whole, on the subject of impeachment of witnesses is almost in the exact language (certainly with no material variance) of §5295 of the Civil Code; and charges in similar language have been repeatedly approved by the Supreme Court and by this court. See especially *Sims* v. *Scheussler*, 5 *Ga. App.* 850 (64 S. E. 99). We therefore conclude that the charge excepted to is not subject to the criticism made, that it "modified and restricted the rules of law governing the impeachment of witnesses, to the prejudice of the defendants." It may be remarked, in this connection, that whether any witness had been successfully impeached was solely a question for the jury; and, under the evidence submitted to them, they could well have come to the conclusion that no attempt made to impeach a witness had been successful.

2. The plaintiffs in error make several assignments of error, based on the rulings of the court in admitting evidence, over objection, as to the existence of a custom or practice on the part of the employees of the railway company and other people, in taking up and carrying away, with the knowledge of the company and its agents, coal and other things found in its yard and which had fallen from its cars; and error is also assigned upon certain portions of the charge to the jury as to the effect of such evidence, if they believed that such custom or practice existed and was known to the defendant company, its servants or agents. The objections to this evidence, and to the charge thereon, are elaborated with great detail, but are embraced in the general state-

ment, that such evidence was immaterial and irrelevant; that there was no evidence that the existence of such a custom or practice was known to the railway company or its agents; and that if such a custom or practice existed, it constituted no defense or justification that could be urged by any particular person. We think that the evidence which tended to show the existence of this custom or practice by the employees and others was clearly relevant and material, as illustrating both the question as to the animus furandi of Peek, and the quo animo of the defendants in making his arrest. Peek did not deny that he had taken the coal from the yard. His defense was that he did not intend to steal it; and to prove such defense, he set up this custom or practice. If it had existed for a long time and was known to the railway company or to Dwyer, its existence would certainly tend to illustrate Peek's innocent purpose and intention in taking the property, and would tend to strengthen the truth of his contention that his arrest and imprisonment were unlawful and without probable cause; in other words, that in taking the coal he had committed no offense, and that this fact was well known to the defendants when they nevertheless arrested and imprisoned him. We therefore conclude that the court did right in admitting the evidence, and properly instructed the jury as to the manner in which such evidence should be considered by them.

From a careful consideration of the case, we are satisfied that no error of law was committed; that the verdict of the jury is supported by the evidence, and that the judgment refusing to grant a new trial should be                    *Affirmed.*