### 6200.   CALDWELL *et al.* v. DUPLEX PRINTING-PRESS CO.

1. The suit was upon a promissory note, and the only defense was failure of consideration. There being no evidence in support of this plea, no finding other than one in favor of the plaintiff was legally proper; and the directing of the verdict was harmless.

2. In an action upon a promissory note for the purchase-price of machinery which the purchasers declined to take, a plea of total failure of consideration is unsupported when the uncontradicted evidence shows that the only reason why the makers of the note declined to take the machinery was that they had no need for it. In this case the note in question was executed contemporaneously with and as a part of a contract for the purchase of machinery, which contained stipulations as to delivery, payment of freight, terms of payment, rate of interest, and other matters which must ordinarily be assumed to be of value to a purchaser, and these promises on the part of the vendor of themselves supplied some consideration.

DECIDED JULY 29, 1915.

Complaint; from city court of Atlanta—Judge H. M. Reid. September 23, 1914.

The Duplex Printing-Press Company sued A. B. Caldwell, Bernard Suttler, and John L. Pugh on their promissory note for $500 and interest, payable to the plaintiff, dated January 31, 1913, and maturing February 10, 1913. The defendants in their answer ad-

mitted the execution of the note, and alleged that the consideration had entirely failed, and that they had never received any consideration for it. On the trial Bernard Suttler testified: "Myself with several other parties contemplated the establishment of a newspaper in Atlanta. Preceding the organization of the paper, Mr. Pugh, Mr. Caldwell, and myself made arrangements to buy a second-hand press from the Duplex Printing-Press Company. The press was, I believe, at Bessemer, Alabama. . . We gave the note sued on as the first payment, and signed a contract covering the purchase. Soon after this we found that we would not be able to carry our plans through, and, not desiring to cause the Duplex Company any loss, we asked them to cancel the whole matter. They held the note and did not ship the press out. Later the newspaper plan fell through entirely. I was taken ill in May and was ill until October. During the time I was confined to my home, Mr. Stone, of the Duplex Company, came to see me and we had a lengthy conversation about this matter. He insisted that we pay the $500 note. I set up against this that we had received nothing from him and did not think it would be just to pay this much money. He then claimed to be entitled to damages. No amount of damages was named. He said he would sue us on the note. I told him we would compel him to release us. I conducted the whole correspondence in regard to this matter. The press was never shipped to us. We never received anything as consideration for this note." The witness identified a contract between himself and his associates and the plaintiff, and testified: "The contract was, I think, signed at the same time as the note sued on. . . We never received the press. I at one time wrote to plaintiffs telling them to hold the press, as the organization of our company was not completed. This was while we still thought we could take it. Plaintiffs offered to deliver the press in Atlanta. I ordered them not to do so. They held it with the understanding that we were to let them know when they could deliver it. We found that we could not pay for it and I asked them not to deliver it and to cancel the contract. I saw two men representing the plaintiffs, one when the trade was made and another at my home when I was ill. It was a Mr. Stone, of some importance in the Duplex Company, who came out to see me. He did not make a specific offer to ship the press, because when the contract was made the press was to be shipped when we advised

them to, and we didn't want it because we couldn't pay for it. They never said they could not ship the press, before we instructed them not to ship it. It is not true that Mr. Stone told me that he was ready to ship the press. I saw Mr. Stone after I had been confined to my bed two or three months. Mr. Dulan before that told us he was ready to ship. The original agreement was that the press was to be held until we paid the $500 note. We never gave them shipping instructions." "Mr. Stone was an officer of the plaintiff company, I don't know just what. In his conversation with me at my house as testified already, he told me that the press had been sold to a party in Pennsylvania. He would not hold us, therefore, to take the press, but wanted us to pay the note. I think Mr. Stone was president of the plaintiff company. He claimed that he had been damaged and that we ought to pay the note. I am reasonably sure the plaintiffs had not been damaged to the extent of $500. I think the home office of plaintiffs was in Battle Creek, Michigan. After the note became due we asked that it be held for three days. This was done because we had not finally given up the proposition and were still trying to carry it through. . . The note sued on was extended." John L. Pugh testified that when the note sued on was accepted by the plaintiff's representative, Mr. Dulan, "he agreed to ship the press when we desired it." No material fact not stated in the preceding testimony was added in the testimony of this witness or in that of A. B. Caldwell.

The contract referred to was for the sale of a printing-press, which was to be ready for shipment on or before March 1, 1913, and for which the purchasers were to pay $6,000, in installments beginning with the one represented by the one sued on.

The court, at the conclusion of the evidence, directed a verdict against the defendants for the amount of the note, and they excepted.

*A. E. Ramsaur, A. E. Wilson,* for plaintiffs in error.

*Charles A. Stokes, W. F. Buchanan,* contra.

RUSSELL, C. J. The plaintiffs in error, having been sued upon a promissory note, filed a plea of failure of consideration. They had the right to do this whether the note was under seal or not (*Sims v. Scheussler,* 5 *Ga. App.* 850 (64 S. E. 99), and the court would have erred in directing a verdict if there had been any testimony tending to show a failure of consideration. "A verdict should not

be directed unless there is no issue of fact, or unless the proved facts, viewed from every possible legal standpoint, can sustain no other finding than that directed." *Davis* v. *Kirkland,* 1 *Ga. App.* 5 (58 S. E. 209). But a judge may direct a verdict when there is no issue of fact; and we think that in the present case the judge correctly held that there was no issue as to the only plea filed by the defendants. The sum and substance of the testimony in behalf of the defendants (who admitted the execution of the note) is that they received no benefit from the execution of the note. The fact that the consideration they received was of no benefit to the defendants because, on account of a change in their plans or an alteration of conditions in Atlanta, they no longer desired the printing-press which they had purchased, and therefore their contract of purchase was of no value to them, did not establish the fact that the contract they secured was totally worthless to others at the time they procured this contract. The testimony in their behalf did not establish their contention that the notes were without consideration; for there was no testimony that the press which the defendants contracted to buy was worth less than the contract price or was for any reason defective, or that there was any unwillingness on the part of the vendor to ship the press, or that shipment was delayed for an unreasonable time. No other conclusion can be drawn from the testimony of the defendants than that, after purchasing the printing-press (a part of the purchase-price of which is represented by the note here sued on), they changed their minds and decided to make an effort to be released from the contract. The fact that something was said by one of the representatives of the plaintiff about claiming damages is wholly immaterial, because by bringing the present action the plaintiff elected to stand upon the contract.

There was evidence that one of the representatives of the plaintiff stated that the press had been sold to a party in Pennsylvania. However, there is no evidence in the record to show that the person making this statement was such an agent of the plaintiff as that his statement could be treated as an admission of the fact of a sale on the part of the plaintiff. Agency can not be proved by the mere declarations of one who claims to be an agent. But even if the admission as to the sale of the press be treated as authoritative, this alone would not release the defendants from payment of the

note; for, according to the terms of the contract, they were required to pay the note before ordering the press to be shipped, and from their evidence it is perfectly plain that they had fully and finally determined never to order the press to be shipped. Even if the press had been sold, proof of this fact would not support a plea of failure of consideration. In *Juchter* v. *Boehm, Bendheim & Co., 63 Ga.* 72, it was held that the fact that the notes declared upon were given for the purchase of goods, and that the plaintiff, in violation of his agreement, foreclosed a mortgage to secure the same debt and caused the goods to be seized and sold, so that they were wholly lost, was not matter for a plea of total failure of consideration. To the same effect is the decision in Dickson *v.* Tunstall, 3 C. P. R. (Pa.) 128, in which it was held that where a note is given to one person for the purchase of bank stock which a third person is bound to deliver, failure to deliver the stock is no defense to a suit on the note.              *Judgment affirmed.*